**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| VINA HERNDON, § | |
|    Plaintiff, § | |
| v. § | No. 3:11-CV-240-N |
| § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
|    Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Vina Herndon ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court considered the parties' briefs and reviewed the record in connection with the pleadings and the applicable law. The final decision of the Commissioner is affirmed.

**Background**[1]

**Procedural History**

On March 24, 2008, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of January 31, 1999. (Tr. 11, 120-125, 126-132.) Plaintiff alleged disability due to arthritis, diabetes, and high blood pressure. (Tr. 148.) An administrative law judge ("ALJ") held a hearing on July 24, 2009. The ALJ informed Plaintiff of her right to representation, but she elected to appear and testify without a representative. (Tr. 24-25.) Plaintiff's niece and an impartial vocational expert ("VE") also testified. (Tr. 22-46.) At the conclusion of the hearing, the ALJ announced his intention

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

to send Plaintiff for a consultative evaluation. (Tr. 45-46.) On August 14, 2009, at the Agency's expense, Lige B. Rushing, M.D., M.S., ("Dr. Rushing") examined Plaintiff and offered an assessment of her physical ability to perform work activity. (Tr. 295-304.) Dr. Rushing is board certified in Internal Medicine, Geriatrics, and Rheumatology in addition to being a certified independent medical examiner. (Tr. 297.) On September 18, 2009, the ALJ proffered Dr. Rushing's medical report and assessment to Plaintiff, notifying her of her right to submit additional evidence or questions about the report, request a subpoena, or request a supplemental hearing. (Tr. 198-199.) The ALJ gave Plaintiff ten days to respond to this information. (Tr. 199.) Plaintiff did not respond. The ALJ issued an Unfavorable Decision on November 24, 2009. (Tr. 11-18.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review on December 13, 2010. (Tr. 1-4.) Accordingly, the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

### Plaintiff's Age, Education, and Work Experience

Plaintiff was born on June 6, 1960. (Tr. 17, 122.) She was 49 years old at the time of the hearing and was considered a younger individual during the entire time period under consideration. (Tr. 27-28.) *See* 20 C.F.R. §§ 404.1563(c), 416.963. Plaintiff had a high school education. (Tr. 17, 28.) Plaintiff had past relevant work as a day care attendant. (Tr. 16.)

### Plaintiff's Medical Evidence

The medical records show that Plaintiff went to Parkland Health and Hospital System Primary Care Clinic ("Parkland") on February 13, 2007, complaining of a kidney infection, lower back pain, and left knee pain that radiated into the left foot. (Tr. 288.) The physical examination showed her blood pressure was elevated at 177/105, her back was tender, and straight leg raising was positive.

2

(Tr. 288-89.) The diagnoses were low back pain and hypertension, for which she received prescriptions. (Tr. 289.) Plaintiff returned to Parkland on March 21, 2007, for a medication refill, and she reported burning urination. (Tr. 291.) Her blood pressure was high at 201/109. (*Id.*) Blood work showed her Hemoglobin A1C was high at 7.3% (reference 4.7-5.8%). (Tr. 287.) The diagnoses were dysuria, diabetes mellitus type 2, and hypertension. (Tr. 293.) At Plaintiff's next appointment at Parkland on June 21, 2007, she complained of pain in her legs and feet. (Tr. 283-84.) Again, her blood pressure was extremely high at 213/119. (Tr. 283.) Plaintiff was not taking her medication and needed refills. (*Id.*) The assessment showed that Plaintiff was on a low salt, diabetic diet. (Tr. 285.) The diagnoses were hypertension, diabetes mellitus, and plantar fasciatus. (Tr. 284.) Plaintiff's next follow-up visit with Parkland was on August 2, 2007. She reported constant knee pain which was worse at night. (Tr. 274.) She indicated her pain was 10 on a scale of 0-10. (*Id.*) Her blood pressure was again elevated at 199/102. (*Id.*) The doctor noted her gait was slow and steady. (*Id.*) Plaintiff admitted that she had taken her last dose of medicine two weeks before the appointment. (*Id.*) The diagnoses were hypertension, diabetes mellitus, and arthritis. (Tr. 275.) On September 12, 2007, Plaintiff went to the emergency room at Parkland with complaints of headaches, right arm pain, dizziness, and blurred vision. (Tr. 273.) Her blood sugar was high at 276 mg/dl and her blood pressure was high at 202/112. (*Id.*) The diagnoses were headache, unspecified essential hypertension, and diabetes mellitus without complication-type II. (Tr. 271.)

On September 24, 2007, Plaintiff returned to Parkland's Primary Care Clinic. She reported right knee pain. (Tr. 267-68.) Her blood pressure was again high at 206/101. (Tr. 268.) The diagnoses were hypertension and diabetes mellitus. (Tr. 267.) Her prescriptions were refilled. (*Id.*)

Plaintiff was next seen in the emergency room of Parkland on January 4, 2008. She reported

3

chest pain, elevated blood pressure, right upper quadrant pain, and dizziness. (Tr. 256.) She also complained of lower back pain as well as having to walk with a cane because of weakness in her right knee. (Tr. 254.) Her blood pressure was high at 201/103. (Tr. 256.) An x-ray of the lumbar spine revealed mild osteopenia, mild to moderate multilevel degenerative disc disease, and facet joint osteoarthritis throughout the lumbar spine. (Tr. 266.) The discharge diagnoses were lower back pain and hypertension. (Tr. 260.)

On June 23, 2008, Plaintiff was seen in the emergency room at Baylor Medical Center at Irving. She reported sustaining an injury to her right second toe. (Tr. 212.) Blood work showed her glucose was elevated at 344 mg/dl (reference: 70-108 mg/dl). (Tr. 226.) X-rays of her right foot showed hypertrophic degenerative arthritis with hypertrophic spurs in the midfoot and metacarpal phalangeal joints. (Tr. 227.) The clinical impressions were hyperglycemia, right foot toenail avulsion, and hypertension. (Tr. 215.)

Plaintiff returned to Parkland on July 9, 2008. She reported headaches and dizziness. (Tr. 236.) At 5'3" tall, she weighed 158 pounds, and her blood pressure was 222/111. (*Id.*) Her blood work showed poor glycemic control, with her Hemoglobin A1C at 10.6% (reference 4.9-6.2%). (Tr. 247.) The doctor's diagnoses were hypertension-uncontrolled, diabetes mellitus, and right foot/toe pain. (Tr. 237.) At Plaintiff's next follow-up appointment on July 30, 2008, she reported that she has had back pain radiating into her right leg since1999, when she fell in a store. She also stated she has had swelling in her feet, and her at-home blood sugars were running in the 400's. (Tr. 240.) Her fasting blood sugar was 299 mg/dl and her blood pressure was 193/106. (*Id.*) The doctor noted she had a limping gait. (Tr. 241.) The diagnoses were diabetes mellitus-uncontrolled, hypertension, and back pain. (*Id.*)

4

On August 14, 2009, Plaintiff saw Dr. Lige Rushing, M.D., for a Consultative Examination. Plaintiff reported arthritis in her hands, arms, feet, and legs. (*Id.*) She said she had pain in her joints, wrists, shoulders, and knees. (*Id.*) Further, Plaintiff complained of weakness in her knees and numbness in the soles of her feet. (*Id.*) Plaintiff also noted she had been a diabetic since 2005 and her blood sugars at home ran in the 200 to 250 range. (*Id.*) Plaintiff said she was diagnosed with hypertension in 1997. (*Id.*) She reported she had headaches and chest pain that she attributed to the hypertension. (*Id.*) Dr. Rushing noted her height was 5'5", her weight was 174 pounds, and her blood pressure was 183/100. (Tr. 296.) The physical examination revealed that Plaintiff's ankle jerks were absent bilaterally; and her knee jerks were diminished. (*Id*.) She had decreased light touch, decreased position sense, and no vibratory sense in her feet. (*Id.*) Although not contained in the report, Dr. Rushing said her blood sugar was elevated and a right hand x-ray was normal. Dr. Rushing's assessment was that Plaintiff did not have any evidence of end organ damage affecting the eyes or peripheral vascular system. (Tr. 297.) However, he said that she had evidence of diabetic peripheral neuropathy. (*Id.*)

Dr. Rushing completed a Medical Source Statement of Physical Ability to Do Work-Related Activities. (Tr. 298-303.) With regard to the exertional strengths, Dr. Rushing opined Plaintiff would be limited to: lifting and carrying up to 10 pounds continuously, 11-20 pounds frequently, and 21-50 pounds occasionally; sitting for three hours at one time and three hours total in an eight-hour workday; standing for three hours at one time and three hours total in an eight-hour workday; and walking for three hours at one time and three hours total in an eight-hour workday. (Tr. 298-99.)

5

**The ALJ's Decision**

After evaluating the record as a whole, the ALJ issued a decision on November 24, 2009, finding that Plaintiff was not disabled. (Tr. 11-18.) In the decision, the ALJ analyzed Plaintiff's claim pursuant to the well-known five-step sequential evaluation process. (Tr. 47-55.)[2] As an initial matter, the ALJ noted Plaintiff was insured for DIB only through June 30, 2003. (Tr. 13.)[3] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 13.) At step two, the ALJ determined that Plaintiff's lumbar disc disease, diabetes mellitus, and hypertension were severe impairments. (Tr. 13.) At step three, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal the requirements of any listed impairments for presumptive disability under the regulations. (Tr. 14.)

Next, the ALJ found that Plaintiff's subjective complaints were not credible to the extent alleged. (Tr. 14-16.) Based on the evidence as a whole, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work. (Tr. 14.)

At step four, the ALJ determined that Plaintiff's RFC precluded the performance of her past relevant work. (Tr. 16.) At step five, the ALJ found that Plaintiff retained the RFC to perform a full

---

[2] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[3] In order to be entitled to a period of disability or DIB, Plaintiff must establish disability prior to her date last insured. *See* 20 C.F.R. § 404.131. Thus, the relevant time period for any Title II application is January 31, 1999, Plaintiff's alleged onset date, through June 30, 2003, her date last insured. (Tr. 13.) However, Title XVI benefits are not paid prior to the date of application. *See* 20 C.F.R. § 416.335. As such, the relevant time period for Plaintiff's Title XVI application is March 24, 2008, her application date, through November 24, 2009, the date of the ALJ's decision. (Tr. 11-18.)

range of sedentary work. (Tr. 14.) The ALJ determined, based on VE testimony, that although Plaintiff could not perform her past relevant work, she retained the RFC to perform other jobs existing in significant numbers in the national economy. (Tr. 17, 42-44.) The ALJ determined Plaintiff would still be able to perform other work such as a nut sorter (sedentary work, SVP of two) of which there are 60,000 jobs nationally and 3,000 in Texas; a clock and watch assembler (sedentary, SVP of two) of which there are 50, 000 jobs nationally and 2,300 in Texas; and an electronic assembler (sedentary, SVP of two) of which there are 125,000 nationally and 5,000 in Texas. (Tr. 17.) Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act at any time through the date of his decision. (Tr. 17.)

## Standard of Review

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

    3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

    4.    If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

    5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

    The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present.

*Greenspan*, 38 F.3d at 236.  However,  "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  Moreover, the terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct claimants how the Commissioner will consider the opinions.[4]  In the Fifth Circuit, "the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d 448, 455 (5th Cir. 2000); *see Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1987).

## Issues

The issues are whether the ALJ committed reversible legal error by failing to proffer post-hearing evidence to Plaintiff's representative and whether the ALJ's decision is supported by substantial evidence.

## Undisputed Facts

On September 18, 2009, Plaintiff was unrepresented.  The ALJ sent Plaintiff a letter addressed to the same address where her Notice of Hearing was mailed.[5] (Tr. 198-199.)  The ALJ enclosed a copy of the doctor's report from the consultative examination on September 18, 2009.  (*Id.*)  With

---

[4] The terms of 20 C.F.R. § 404.1527(a)(2) provide:

> (2) Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

[5] Plaintiff acknowledged receipt of the Notice of Hearing and testified at the hearing that she was still living at the same address.  Additionally, on Plaintiff's Notice of Appeal, she listed her address as 4331 Olde Forge Road, No.  22, Dallas, TX 75211, the address where the ALJ's letter was sent.  (Tr. 109, 27.)

9

headings in bold print, the letter notified Plaintiff of the "**Actions [She] Had a Right to Take**." (*Id*.) These actions included the opportunities to request a supplemental hearing, provide additional evidence, request subpoenas for witnesses, or offer written questions to send to the consultative physician. (*Id*.) The letter informed Plaintiff that if she requested a supplemental hearing, the ALJ would "grant the request unless he receive[d] additional records that support[ed] a fully favorable decision" (*Id*.) Also in bold print, the letter notified Plaintiff of "**Actions [the ALJ] Will Take If [He] Does not Hear from You**." (*Id*.) The ALJ stated:

> if I do not receive a response from you within 10 days of the date you receive this notice, I will assume that you do not wish to submit any written statements or records and that you do not wish to request a supplemental hearing or to orally question the author(s) of the enclosed report's. I will then enter the enclosed evidence in the record and issue my decision.

(*Id*.)

The record does not reflect any response from Plaintiff. On October 27, 2009, five weeks after the letter was sent and well after the letter's ten-day deadline had expired, an attorney representative filed a notice of appointment with the agency. (Tr. 111-119.) The attorney representative requested that the ALJ send him a copy of Plaintiff's file. (Tr. 116.) The record does not reflect a request from the attorney representative for a supplemental hearing on the consultative examination or report, a request for subpoenas for witnesses, or a request for the opportunity to cross-examine the consultative examiner. (*Id*.) On January 5, 2010, Plaintiff's representative filed a Notice of Appeal of the unfavorable decision. Although counsel stated he would file any additional objections after the received a copy of the tape of the hearing, the record does not show that he raised any additional objections. At the Appeals-Council level, Plaintiff did not request a supplemental hearing or seek any subpoenas for witnesses. She did not make a request to cross-examine the

10

consultative examiner. (Tr. 202-204). Additionally, Plaintiff's appeal raised no issues with the consultative evaluation itself. (*Id*.)

At the time the ALJ sent Plaintiff the letter proffering the consultative report, Plaintiff was not represented. The Hearings, Appeals and Litigation Law Manual (HALLEX) explains the proffer of evidence when a claimant is unrepresented:

**A.  When Proffer is Required**

The Administrative Law Judge (ALJ) must proffer all posthearing evidence unless:

• The evidence was submitted by the claimant or the claimant's representative and there is no other claimant to the hearing.

• The claimant has knowingly waived his or her right to examine the evidence (See I-2-7-15, Waiver of the Right to Examine Posthearing Evidence.).

• The ALJ proposes to issue a fully favorable decision.

**B.  The Proffer Letter**

The proffer letter must:

• Give the claimant a time limit to object to, comment on or refute the evidence, submit a written statement as to the facts and law that the claimant believes apply to the case in light of the evidence submitted, submit written questions to be sent to the author(s) of the proffered evidence or exercise his or her rights with respect to requesting a supplemental hearing and the opportunity to cross-examine the author(s) of any posthearing report(s) if it is determined by the ALJ that such questioning is needed to inquire fully into the issues.

• Advise the claimant that he/she may request a subpoena to require the attendance of witnesses or the submission of records and the procedures for the requesting and issuance of a subpoena.

* * *

**D. Unrepresented Claimant**

If a claimant is unrepresented, prepare a proffer letter to the claimant, and make one copy. The Proffer Letter may be accessed by proceeding to DGS; click on "Correspondence," click on "Posthearing," and then click on "5E - Time to Submit Additional Evidence." Modify the letter as necessary to reflect that it is being sent to an unrepresented claimant.

Distribute it as follows:

• Send the original proffer letter and a copy of the new evidence to the claimant.

• Enter into the record a copy of the proffer letter, a copy of the new evidence, and any comments received from the claimant regarding the new evidence.
HALLEX I-2-7-30, 1993 WL 643048 (Sept. 02, 2005).

Thus, the rules required that the Commissioner send a copy of the consultative report to the Plaintiff or to her representative, depending on whether the claimant was represented or unrepresented when the proffer was made. The record reflects that the Commissioner properly sent a copy of the post-hearing consultative report to Plaintiff. Plaintiff's representative's suggests that Plaintiff did not receive the ALJ's proffer; however, this suggestion, which is not supported by a sworn declaration from Plaintiff, is not competent evidence. Plaintiff has failed to show that the ALJ committed a legal procedural error which requires reversal and remand of this case.

Plaintiff further contends that the ALJ's findings were not supported by substantial evidence, the ALJ failed to consider the record as a whole, and the proper legal standards were not applied. Plaintiff contends that the administrative record indicates that there are missing medical records. Plaintiff relies upon her testimony at the hearing that she had recently been hospitalized while she was a visitor in Gary, Indiana. (Tr. 34.) Plaintiff faults the ALJ for failing to obtain the medical records from Gary, Indiana. At the hearing, when the ALJ expressed an interest in the records, Plaintiff stated that her sister in Indiana would obtain the records and forward them to the agency. (Tr. 45.) The ALJ asked Plaintiff to submit the records within 30 days. (*Id*.) Plaintiff did not supply information to the Court regarding where she was hospitalized so that the agency could obtain the records. Further, she did not obtain the records and supply them to the agency, nor has her attorney representative done so. Plaintiff did not submit the records for review by the ALJ or the Appeals Council or make them a part of the record by attaching them to Plaintiff's brief. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (denying claimant's request for remand to further

12

consider whether she had been treated by medical source when claimant presented no evidence that remand would yield favorable evidence); *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (finding no prejudice where the lawyer did not obtain, or try to obtain, the items that were complained about). Under the facts present here, Plaintiff has not shown that she was prejudiced by any allegedly missing records from a medical source in Gary, Indiana.

Plaintiff contends that the ALJ committed prejudicial legal error by relying on Dr. Rushing's report, contending that Dr. Rushing limited Plaintiff to sitting, standing, and walking only six hours in an eight-hour work day. (Tr. 299.) This claim is frivolous because the Court need look no further than the face of Dr. Rushing's medical source statement to determine that it is meritless. Dr. Rushing's statement clearly and plainly states that "in an eight hour workday," Plaintiff could walk a total of three hours, stand a total of three hours, and sit a total of three hours. (Tr. 299.) Further, as the Commissioner points out, Dr. Rushing did not answer the follow-up question which was to be answered "if the total time for sitting, standing, and walking does not equal or exceed eight hours." (*Id.*) Additionally, this finding is consistent with Dr. Rushing's report, indicating Plaintiff had no swelling in her knees (despite her complaints of arthritis), no edema, normal present pulses in her extremities, and a full range of motion. (Tr. 295-96.) Other than some evidence of neuropathy, Plaintiff's examination was largely normal. (Tr. 297.) The doctor concluded that Plaintiff's ability to perform "normal activities and a sedentary occupation did not appear to be substantially impaired." (*Id.*)

Further, there is no indication that ALJ failed to consider Plaintiff's medical treatment viewed as a whole. The medical records showed largely normal examination findings, a negative straight leg raise, and a recommendation for conservative treatment such as physical therapy. (Tr. 214, 254,

256, 261.) Additionally, the ALJ was permitted to consider Plaintiff's statement that she "wants disability." (Tr. 240.) Also, Plaintiff stated that Excedrin relieved her pain and admitted to non-compliance with her medication when she sought treatment and medication was prescribed. (Tr. 254, 267-268, 274, 293.) None of these facts suggest disabling limitations inconsistent with Dr. Rushing's assessment. (Tr. 299.)

## Conclusion

The Commissioner met his burden to find that Plaintiff could perform other work that exists in significant numbers in the national economy (Tr. 17-18.) Plaintiff failed to prove that she cannot perform the alternative work. No prejudicial legal errors require reversal and substantial evidence and relevant legal precedent support the Commissioner's decision finding that Plaintiff is not disabled under the Act.

## Recommendation

The Court recommends that the District Court affirm the Commissioner's decision and deny Plaintiff's appeal.

**So Recommended**, February 27, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).